**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **HEATHER KNOWLES,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No.   05 C 1613** |
| **v.** ) | |
| **UNITED HEALTHCARE SERVICES, INC.,** ) | **HONORABLE DAVID H. COAR** |
| ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Heather Knowles ("Plaintiff") is suing Defendant United HealthCare Services,

Inc. ("Defendant") for violation of the Age Discrimination in Employment Act of 1967

("ADEA"), as amended, 29 U.S.C. § 621, et seq., and for intentional infliction of emotional

distress.  Before this Court is Defendant's motion for summary judgment.  For the following

reasons, Defendant's motion is GRANTED.


**I.     FACTS[1]**

Both parties have failed to comply strictly with the Local Rules in presenting the facts of

this case.  In responding to Defendant's statement of material facts, Plaintiff omitted specific

references to supporting materials when contradicting certain facts;[2] failed to respond to other

---

[1]  Unless otherwise stated, the following facts are taken from the parties' Local Rule 56.1
materials.

[2]  See Plaintiff's response to Defendant's fact ¶¶ 54, 56, 65, 68-74.

facts with a denial or an admission;[3] and admitted still other facts, but improperly included additional facts or arguments with the admission.[4]  See Local Rule 56.1(b)(3)(B) (the opposing party shall file a "response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"); Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").  The consequence of these improper responses is that, for each, Defendant's version of the facts is deemed admitted.  See McGuire v. United Parcel Service, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."); id. ("We will not take into consideration those additional facts improperly inserted into [the parties'] pleadings."); Valenti v. Qualex, Inc., 970 F.2d 363, 369 (7th Cir. 1992) ("Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted."); id. ("[A] responsive statement that is a flat denial, without reference to supporting materials, or with incorrect or improper references, and containing irrelevant additional facts, has no standing . . . .").

Defendant's response to Plaintiff's statement of additional facts is also lacking. Defendant responded to each fact that it disputes with mere citation to Northern District of Illinois or Seventh Circuit case law.  Defendant failed to indicate to the Court the nature of its

---

[3]  See Plaintiff's response to Defendant's fact ¶¶ 57-63.

[4]  See Plaintiff's response to Defendant's fact ¶¶ 9, 15, 27, 28, 36, 40, 42, 43, 47, 48, 85, 88.

objection, leaving the Court to guess whether Defendant disputes the fact's materiality, or its relevance, or its truth. The Court repeats the rule stated above: "An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." McGuire, 152 F.3d at 675; see also Local Rules 56.1(a),(b)(3)(B). Thus, with the exception of Plaintiff's additional facts that Defendant's statement of material facts already encompasses, for every one of Plaintiff's additional facts that Defendant disputes with mere reference to case law, Plaintiff's additional fact is deemed admitted.

Background

Plaintiff was born on July 4, 1959. She began working for Defendant in August of 1995 as Director of Billing and Banking in California. Thereafter, from July through October of 1997, Plaintiff worked on a temporary basis as a project manager for Defendant's local health plan in Chicago.

In December of 2002, Plaintiff joined Defendant's Clinical Operations medical management expense team in Chicago. She was a Senior Medical Expense Analyst until December of 2003, when she was told that a reorganization of the Clinical Operations Group would take place and she should apply for up to three other positions to retain her employment. Defendant ultimately offered Plaintiff all three positions to which she applied—Manager of Employer Group Benefits, Consultant of Employer Group Benefits, and Senior Regional Utilization Specialist. Plaintiff contends that she was considered the top or second candidate for each position, and different managers fought to have her join their teams. She accepted the third position, Senior Regional Utilization Specialist.

<u>Senior Regional Utilization Specialist</u>

Plaintiff began her transition to her new position on February 16, 2004. The position was in the Hospital Utilization unit of the Healthcare Affordability department in the Clinical Operations Group. Defendant planned to staff this new unit with three specialists, each of whom was responsible for monitoring utilization and expenses for the hospital and facilities in his or her assigned demographic area. Plaintiff's responsibilities included analyzing information that she pulled from a data warehouse system, and making recommendations based on those analyses.

Defendant hired Carrie Cooper ("Cooper") and Alan Stacy ("Stacy") as Senor Regional Utilization Specialists in March of 2004 and May of 2004, respectively. Consequently, by May of 2004, there were three Senor Regional Utilization Specialists, including Plaintiff, in Plaintiff's unit. All three reported to Dr. Norm Ryan ("Dr. Ryan"), Medical Director.

<u>Plaintiff's Work for Ralph O'Brien</u>

Ralph O'Brien ("O'Brien"), Director of Delivery Systems, is a member of the senior management for the Clinical Operations Group, and is therefore responsible for Healthcare Affordability.

Plaintiff worked directly with O'Brien on a presentation that he gave to the Medical Cost Oversight Group ("MCOG") in June or July of 2004. The MCOG is comprised of senior level executives, including the Chief Executive Officer, the Chief Financial Officer, and the Chief Medical Officer.

Plaintiff was responsible for performing analyses to determine the impact that having nurses on-site had on utilization of services. Plaintiff's analysis, based on the data she pulled and the criteria she was given, showed that on-site nurses did not impact utilization.

According to Defendant, O'Brien questioned the accuracy of Plaintiff's results in at least two conversations. Specifically, Plaintiff's analysis contained conflicting data points, and Plaintiff re-performed the analysis several times but arrived at a different, clearly incorrect result each time. Defendant further maintains that, the night before O'Brien's presentation, he found several errors in Plaintiff's formulas and discovered that Plaintiff "cut and pasted" data in cells, causing some of the errors. Although O'Brien personally made corrections in the spreadsheet that night, he was not confident that the analysis was error-free or that the supporting data was valid. He testified that he had to present the data to the MCOG with the caveat that the data was still being verified. O'Brien believed that Plaintiff's mistakes set the project back for him and his entire team, and that their credibility was damaged in front of the MCOG.

According to Plaintiff, O'Brien merely had a brief discussion or two with Plaintiff about the mistakes in two calculations and the one incorrect formula they discovered upon proofreading the report. Plaintiff admits that the information she provided to O'Brien contained these two mistakes and the one incorrect formula. Plaintiff maintains that she was never told that O'Brien had to recalculate the cells in her report before his presentation.


Plaintiff's Termination

In July of 2004, Defendant identified the need to reduce operating expenses by forty million dollars to sustain profitability. O'Brien was asked to determine if the Healthcare

Affordability department could be reorganized to reduce costs. He did so, and an analysis showed that the Hospital Utilization and Physician Utilization units could be consolidated into one team that focused on overall utilization management. The consolidation would reduce duplication of work and hospital data sharing activities. O'Brien also believed that by consolidating the two units, he could eliminate one Senior Regional Utilization Specialist position.

Accordingly, O'Brien decided that the Hospital Utilization unit would be eliminated and the duties performed by its Senior Regional Utilization Specialists would be absorbed by the single, remaining team. O'Brien worked with Defendant's human resources group to determine which specialist would be eliminated in accordance with the company's guidelines on downsizing. The guidelines for managers to follow when selecting individuals for a reduction in force ("RIF") are found in the company's "Downsizing Analysis." Defendant maintains that the Downsizing Analysis is an objective method that allows managers to select the individuals best qualified to remain with Defendant so that it can achieve its business objectives. As a part of this process, a manager should document the business case supporting the need for a RIF, establish an appropriate peer group, and complete the Downsizing Analysis with the help of the human resources group as necessary.

O'Brien worked with the human resources group to prepare a business case supporting the decision to reorganize the Healthcare Affordability department. Plaintiff disputes the following, but Defendant maintains that, following the procedures set forth in the policy, O'Brien completed the Downsizing Analysis worksheets by comparing the key qualifications, specific and necessary skills, and experience of the six Senior Regional Utilization Specialists

(three from the Hospital Utilization unit and three from the Physician Utilization unit), including Plaintiff. All six specialists performed similar work on various projects in the Healthcare Affordability department. O'Brien was familiar with each specialist's skills because, on different occasions, he personally had worked with each of them.

O'Brien ranked Plaintiff the lowest out of the six Senior Regional Utilization Specialists based on his experience with Plaintiff's work on the MCOG presentation—work he reportedly found unacceptable. O'Brien did not have similar performance issues with the five other specialists, Samantha Dudeck, Alan Stacy, Arlene Rome, Rosemary Leone, and Carrie Cooper.

On August 31, 2004, Dr. Ryan, who reported to O'Brien, notified Plaintiff that her employment was terminated as a part of the RIF. Dr. Ryan did not tell Plaintiff that the reason for her termination was her age, and Plaintiff never spoke with O'Brien regarding the reasons for her termination.

Defendant maintains that age was not a factor in the ranking nor in the decision to select Plaintiff for termination pursuant to the RIF. Rather, Defendant states that O'Brien decided to eliminate her position and her employment because Plaintiff was ranked the lowest. O'Brien testified that he did not know Plaintiff's age, or the age of any of his staff, when he completed the ranking. Plaintiff disputes this because O'Brien, she contends, had access to her personnel record. Defendant also maintains that it did not replace Plaintiff with another employee after her termination. Plaintiff, on the other hand, emphasizes that Defendant eliminated her department, and transferred the activities she and her team once performed to the remaining members of the Healthcare Affordability team.

Plaintiff's former colleagues, Stacy and Cooper, retained their employment. They are both younger than Plaintiff, and were under forty at the time of Plaintiff's termination. Plaintiff does not know their positions or job duties, but acknowledges that they now have additional job responsibilities, such as physician data sharing based on information from a medical expense analyst.

Plaintiff's Emotional Distress

Plaintiff states that she was saddened, humiliated, and confused by her layoff, and that she could not sleep or eat for a couple of weeks. She did not see a doctor, nor was she prescribed any medication. Defendant notes that, at the time Plaintiff was terminated, Plaintiff was also going through a divorce.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone. Celotex, 477 U.S. at 324. "A scintilla of evidence in support of the non-movant's position is insufficient," Anderson, 477 U.S. at 252, and the non-movant "must do more than simply show that there is some metaphysical doubt as to the material fact." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255.

## III.    DISCUSSION

Plaintiff's First Amended Complaint contains an age discrimination claim (Count I) and a state law claim for intentional infliction of emotional distress (Count II). Defendant moves for summary judgment on both claims.

### A.    Age Discrimination

Defendant moves for summary judgment on the grounds that Plaintiff cannot establish a prima facie case of age discrimination. Even if Plaintiff could, Defendant argues, she cannot

show that Defendant's legitimate, non-discriminatory reason for Plaintiff's termination was a pretext for discrimination.

Plaintiff may establish age discrimination in one of two ways. She may present direct or circumstantial evidence that age was the determining factor in the adverse employment action (which Plaintiff is not attempting to do), or she may invoke the burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to create an inference of age discrimination. See Olson v. Northern FS, Inc., 387 F.3d 632, 635 (7th Cir. 2004). Under the latter method, Plaintiff must establish a prima facie case by showing: (1) she is a member of a protected class (employees over forty years of age, see 29 U.S.C. § 631(a)(2005)); (2) she was meeting Defendant's legitimate expectations; (3) she was subject to an adverse employment action; and (4) Defendant treated younger, similarly situated employees more favorably. See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 574 (7th Cir. 2003). If Plaintiff meets this burden, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for its adverse employment decision. If Defendant does so, the burden shifts back to Plaintiff to present evidence sufficient for a fact finder to find that Defendant's explanation is pretextual. Id.

### 1. Has Plaintiff Established a Prima Facie Case?

Defendant argues that Plaintiff fails to satisfy the second and fourth elements of her prima facie case.[5] First, according to Defendant, Plaintiff cannot show that she was meeting Defendant's legitimate performance expectations. Defendant points to Plaintiff's poor work on

---

[5] The parties agree that Plaintiff satisfies the first and third elements of her prima facie case.

the MCOG project in June or July of 2004—poor work that informed O'Brien's ranking of Plaintiff in August.

Plaintiff does not dispute the errors in her work for O'Brien. Instead, she offers the affidavits of Esther Morales ("Morales") and Elizabeth Peters ("Peters") to demonstrate her "exemplary work ethic and her outstanding performance" on the job. Pl.'s Resp. at 4. Morales hired Plaintiff into the department she led, Medical Expense Management, in 2002. Morales testified that Plaintiff was the most exceptional employee she had, and the only employee on Morales' team to be awarded stock options for "stellar work product" and "relentless work ethic." Pl.'s Resp., Ex. C, ¶3. Morales also testified that Plaintiff received the best company review and the largest monetary bonus of any employee while she was on Morales' team. The department, however, was dissolved at the beginning of 2004—the event that led Plaintiff to apply for and accept the Senior Regional Utilization Specialist position. Morales left the company in August of 2004.

Peters was Plaintiff's co-worker until August of 2004, and was terminated shortly thereafter, in September of 2004. Peters' affidavit praises Plaintiff's diligence and brilliance, and explains that Plaintiff became her "mentor and tutor." Pl.'s Resp., Ex. D, ¶ 3. Both Morales and Peters testified that Plaintiff created several products that Defendant continues to use, and both note that Plaintiff received the prestigious President's Award in February of 2004.

Neither affidavit creates an issue of fact as to whether Plaintiff was meeting Defendant's legitimate expectations at the time of the RIF. Indeed, "the issue is whether the employee was performing well *at the time of his termination*." Karazanos v. Navistar International Transportation Corp., 948 F.2d 332, 336 (7th Cir. 1991) (emphases added); see also Staples v.

-11-

Pepsi-Cola General Bottlers, Inc., 312 F.3d 294, 300 (7th Cir. 2002) ("[a]dequate performance by [the plaintiff] at some point in the past does not negate [the defendant's] estimation that his performance was deficient at a later time.").  Furthermore, "earlier evaluations cannot . . . standing alone, create a genuine issue of triable fact when, as here, there have been substantial alterations in the employee's responsibilities and supervision in the intervening period."  Fortier v. Ameritech Mobile Communications, Inc., 161 F.3d 1106, 1113 (7th Cir. 1998).  In short, Morales was no longer Plaintiff's supervisor by the beginning of 2004, she was not involved in Plaintiff's work for O'Brien or O'Brien's assessment of that work during the summer of 2004, and she did not testify about that work or O'Brien's assessment of that work.  Morales' opinion of Plaintiff's past performance, therefore, does not create an issue of triable fact.

The affidavit of Peters, who was never Plaintiff's supervisor, is similarly unhelpful in this endeavor.  "[T]he general statements of co-workers, indicating that a plaintiff's job performance was satisfactory, are insufficient to create a material issue of fact as to whether a plaintiff was meeting her employer's legitimate employment expectations at the time she was terminated."  Peele v. Country Mutual Insurance Co., 288 F.3d 319, 329 (7th Cir. 2002).

Plaintiff also suggests that her competitiveness and desirability for the three positions to which she applied when her department was reorganized in December of 2003 creates a genuine issue as to whether she was meeting Defendant's legitimate expectations.  Again, Plaintiff is out of luck: "[W]hether one is qualified may change from time to time. The fact that an individual may have been qualified in the past does not mean that he is qualified at a later time."  Karazanos, 948 F.2d at 336 (internal citations omitted).

In sum, Plaintiff has not shown that she was performing her job satisfactorily at the time of her termination. By contrast, Defendant has produced evidence of its Downsizing Analysis policies and procedures, and the worksheet ranking Plaintiff vis-a-vis her peers.

Although Plaintiff's failure to satisfy a single element of her prima facie case is enough to grant summary judgment in Defendant's favor on Plaintiff's ADEA claim, this Court will explain the other inadequacies of Plaintiff's case. Defendant, for example, correctly argues that Plaintiff cannot satisfy the fourth element of her prima facie case: She cannot identify a younger, similarly-situated individual who was retained.

According to Plaintiff, Defendant treated Stacy and Cooper. In this RIF case, however, Plaintiff must "show at a minimum that the retained or transferred younger employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought . . . ." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000). Plaintiff has not made this showing: She does not dispute Defendant's assertion that Plaintiff did not possess qualifications analogous to that of Stacy and Cooper because she ranked lower than them in the Downsizing Analysis.

Perhaps because she lacks personal knowledge about Stacy and Cooper's qualifications, Plaintiff relies on Morales to establish that Stacy and Cooper were less qualified but retained to perform the same job function Plaintiff once performed. Morales' testimony as to Stacy and Cooper's qualifications is somewhat puzzling, though, since Morales did not hire, supervise, evaluate, or otherwise have anything to do with the duties of Stacy and Cooper. Moreover, Morales no longer worked at the company after August of 2004. She offers no basis for her testimony as to Stacy and Cooper's job function after both she and Plaintiff were gone. Morales'

testimony, then, undisputedly contravenes Federal Rule of Civil Procedure 56(e), which requires that "affidavits shall be made on *personal knowledge*, shall set forth such facts as would be *admissible* in evidence, and shall show affirmatively that the affiant is *competent to testify* to the matters stated therein."  Fed. R. Civ. P. 56(e) (emphases added); see also Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence [which may include the witness' own testimony] is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

As "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment," Plaintiff's attempt to satisfy the fourth element of her prima facie case with Morales' affidavit fails.  Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

### 2. Has Plaintiff Established Pretext?

Even if Plaintiff could establish a prima facie case of age discrimination, she is unable to demonstrate that Defendant's legitimate, non-discriminatory reason for her termination—her low ranking in the Downsizing Analysis based on O'Brien's experience with her work—is pretextual.    Plaintiff offers five reasons Defendant's grounds for her termination should be considered pretext, or "a dishonest explanation, a lie rather than an oddity or an error." Kulumani v. Blue Cross Blue Shield Association, 224 F.3d 681, 685 (7th Cir. 2000).  None of these reasons, however, would allow a reasonable jury to infer that Defendant terminated Plaintiff because of her age rather than the Downsizing Analysis ranking.  See Vaughan v. Roadway Express, Inc., 164 F.3d 1087, 1090 (7th Cir. 1999).

First, Plaintiff highlights the President's Award she received in February of 2004. Receipt of this award, however, does not create an inference that Defendant has provided a dishonest explanation for her termination. As noted earlier, satisfactory past performance does not negate the possibility of deficient performance at the time of an employee's termination. See Staples, 312 F.3d at 300; Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 545-46 (7th Cir. 2002) (receipt of monthly award insufficient to show that plaintiff was performing his duties to the employer's satisfaction at the time of termination).

Second, Plaintiff argues that a reasonable jury would not believe that she successfully worked for Defendant for eight and a half years, yet her limited work on the "tail end" of a single project resulted in a low ranking vis-a-vis her peers. Pl.'s Resp. at 6. This version of events, however true, is incapable of creating an inference that Defendant's reason for Plaintiff's termination is pretextual, especially when Plaintiff does not dispute the facts underlying her low ranking. As explained in Kariotis v. Navistar International Transportation Corp., 131 F.3d 672, 677 (7th Cir. 1997):

> [A]n opportunity for rebuttal is not an invitation to criticize the employer's evaluation process or simply to question its conclusion about the quality of an employee's performance. Rather, rebuttal must include facts tending to show that the employer's reasons for some negative job action are false, thereby implying (if not actually showing) that the real reason is illegal discrimination. In other words, arguing about the accuracy of the employer's assessment is a distraction, because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest.

Id. (internal citation omitted).[6]  Indeed, "a reason honestly described but poorly founded is not a pretext as that term is used in the law of discrimination."  Pollard v. Rea Magnet Wire Co., Inc., 824 F.2d 557, 559 (7th Cir.1987) (distinguishing pretext in the law of discrimination from pretext in everyday usage).  Even if Plaintiff's disagreement with Defendant's criteria for the Downsizing Analysis was justified, she has not shown that Defendant falsely stated the criteria on which it relied, nor has she presented credible evidence that Defendant's reason for her termination was, indeed, false.

Third, Plaintiff insists that the affidavits of Morales and Peters help to establish Defendant's reason for her termination as pretextual.  As explained earlier, however, Morales and Peters' testimony is inadequate because they lack personal knowledge about Defendant's reasons for terminating Plaintiff.  Moreover, their opinion as to Plaintiff's past performance does not indicate that O'Brien was being dishonest when he ranked Plaintiff low because of her subsequent work for him.  See Abioye v. Sundstrand Corp., 164 F.3d 364, 369 (7th Cir. 1998) (holding that favorable affidavits of plaintiff's mentor and former supervisor do not support "the inference that the termination was pretextual and that [defendant] did not actually believe [plaintiff] was a poor performer").

---

[6]  For this reason, Plaintiff's argument that O'Brien did not consult her various supervisors when he ranked her also fails.  The argument is nothing more than a complaint about Defendant's evaluation process.  Moreover, the Seventh Circuit rejected this argument in Peele: "We are unpersuaded by [the plaintiff's] argument that evidence of her poor job performance must be balanced against the 'favorable performance reviews, raises, and promotions' she received during her eight-plus years with the company . . . .  [T]he issue is not the employee's past performance but whether the employee was performing well at the time of [her] termination."  Peele, 288 F.3d at 329.

Fourth, Plaintiff alleges that O'Brien complained that she was making too much money because of her seniority. Plaintiff refers to Morales' testimony that O'Brien (a) complained to a third party in Morales' presence that "certain employees" were earning too much and (b) told Morales that there were employees in Plaintiff's pay grade making substantially less than Plaintiff. Pl.'s Resp., Ex. C, ¶ 5. An employment decision based on compensation level, however, does not violate the ADEA. <u>See</u> <u>Anderson v. Baxter Healthcare Corp.</u>, 13 F.3d 1120, 1126 (7th Cir. 1994) (holding that plaintiff "could not prove age discrimination even if he was fired simply because [defendant] desired to reduce its salary costs by discharging him."). Age and compensation level are "analytically distinct"—an employer can consider one factor while ignoring the other. <u>Id.</u> (citing <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 611 (1993)).

Further, even if these two remarks amounted to admissible evidence of age discrimination, there remains a temporal proximity and relatedness problem. Only "age-based derogatory remarks made *around the time of and in reference to* an employment action are relevant to a finding of discrimination." <u>Schuster</u>, 327 F.3d at 575 (emphases added). According to Morales, O'Brien made these remarks at the beginning of 2004, several months before Plaintiff began and ended her project for him, and more than six months before Plaintiff's termination. Moreover, the facts show that O'Brien made these remarks in the context of the company's reorganization in late 2003 and early 2004, not in the context of the RIF that would take place at the end of the summer. Under Seventh Circuit law, these remarks are deemed unrelated to Defendant's termination decision and insufficient to establish pretext. As explained in <u>Schuster</u>: "The less direct the connection between the comment and the employment action—that is, if the comment was not made in temporal proximity to the employment action, or

if the comment was not made in reference to that action—the less evidentiary value the comment will have." Id. at 576 (holding that age-related remark made five months before the termination decision was insufficient to raise an issue of material fact as to the real reason behind plaintiff's termination).

Fifth, Plaintiff argues that "many people stated that the reason [she] was fired was because of her age." Pl.'s Resp. at 6. Specifically, Plaintiff testified that, on separate occasions, Morales, Peters, and Defendant's in-house compliance attorney, Barbara Holmes (who was in a different department and who Plaintiff has not alleged was involved in the termination decision), volunteered to her their opinion that she was the victim of age discrimination. These statements are inadmissible hearsay statements, made without personal knowledge or foundation, and based on mere speculation.[7] Such speculation is not sufficient to create an inference that Defendant has been dishonest in stating its reason for terminating Plaintiff: "A party to a law suit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." Karazanos, 948 F.2d at 337 (internal citation omitted).

In sum, Plaintiff has failed to establish a prima facie for age discrimination and failed to cast doubt on Defendant's reason for her termination. O'Connor v. DePaul University, 123 F.3d 665, 670 (7th Cir. 1997). "If the evidence does not amply support [a] plaintiff's claim that the defendant's explanation is unworthy of credence, judgment as a matter of law is entirely appropriate." Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997) (internal citations omitted). Defendant therefore is entitled to summary judgment on Plaintiff's ADEA claim.

---

[7] Notably, Morales and Peters do not corroborate Plaintiff's testimony in their affidavits.

**B.      Intentional Infliction of Emotional Distress**

Having disposed of Plaintiff's federal law claim, this Court need not retain supplemental jurisdiction over Plaintiff's state law claim.  <u>See</u> 28 U.S.C. § 1367(c)(3).  Nonetheless, this Court grants Defendant's motion for summary judgment as to Plaintiff's state law claim because Plaintiff has provided insufficient evidence to support that claim.

To state a claim for intentional infliction of emotional distress in Illinois, Plaintiff must show that: (1) Defendant's conduct was extreme and outrageous; (2) Defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) Defendant's conduct actually caused severe emotional distress. <u>See</u> <u>Lifton v. Board of Education of City of Chicago</u>, 416 F.3d 571, 579 (7th Cir. 2005) (citing <u>Thomas v. Fuerst</u>, 803 N.E.2d 619, 625 (Ill. App. Ct. 2004)).  "Severe emotional distress is distress so severe that no reasonable person could be expected to endure it."  <u>Id.</u> (internal quotation marks omitted).  "Liability is attached only in circumstances where the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'"  <u>Thomas</u>, 803 N.E.2d at 625 (quoting <u>Public Finance Corp. v. Davis</u>, 360 N.E.2d 765, 767 (Ill. 1976)).

A reasonable jury could not find that Plaintiff's humiliation, confusion, and inability to sleep and eat, without more, constitutes severe emotional distress.  Distress such as humiliation and worry is not sufficient to give rise to a cause of action in Illinois.  <u>See</u> <u>Adams v. Sussman & Hertzberg, Ltd.</u>, 684 N.E.2d 935, 941-42 (Ill. App. Ct. 1997).  Nor is sleeplessness or loss of appetite, where Plaintiff produces no evidence as to the severity of her symptoms.  In <u>Adams</u>, for example, the court denied relief because there was "no evidence to show the severity of the

distress [the plaintiff] suffered, i.e., that he was hospitalized, sought and received psychiatric treatment, or even was prescribed medication." Id. Similarly, in Knysak v. Shelter Life Insurance Co., 652 N.E.2d 832, 839 (Ill. App. Ct. 1995), the plaintiff failed to prove severe emotional distress when he testified that he was "very upset, very nervous, and very depressed," but like Plaintiff, did not require medical treatment.

There is also insufficient evidence for a reasonable jury to find that Plaintiff has met the high bar for plaintiffs alleging that an *employer* caused them severe distress. See Graham v. Commonwealth Edison Co., 742 N.E.2d 858, 867 (Ill. App. Ct. 2000) ("Courts often hesitate to find a claim for intentional infliction of emotional distress in employment situations."). In Illinois, "[c]ourts are concerned that, if everyday job stresses resulting from discipline, personality conflicts, job transfers *or even terminations* could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." Id. (emphases added). Consequently, "[m]ost conduct by an employer that falls short of attempted coercion into a crime or sexual misconduct, even if such conduct is illegal, has fallen short of the 'outrageous' behavior required by caselaw." Fang v. Village of Roselle, 1996 WL 386556, No. 95 C 5175, at *3 (N.D. Ill. July 5, 1996) (collecting cases).

Had there been any arguments in support of Plaintiff's claim, Plaintiff waived those arguments by failing to raise them in her response brief, which does not even mention her intentional infliction of emotional distress claim. But even if Plaintiff did not intend to effect such a waiver, there is no triable issue of fact as to whether Defendant's termination decision was extreme or outrageous, or whether Plaintiff suffered distress no reasonable person can be

expected to endure.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's state law claim.

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **May 19, 2006**